**Luis M. GRULLON, Plaintiff,**

v.

**Henry A. KISSINGER, etc., et al., Defendants.**

**No. 75 C 223.**

United States District Court,
E. D. New York.

July 20, 1976.

Antonio C. Martinez, New York City, for plaintiff.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., by Lewis F. Tesser, New York City, for defendants.

## MEMORANDUM AND ORDER

PRATT, District Judge.

Plaintiff, a legal permanent resident of the United States, brought this action to further the efforts of his natural father, Martin Grullon, to obtain an immigrant visa. Martin's application was denied on February 20, 1974 by defendant Wythe, acting as Vice-Consul of the United States at Santo Domingo, Dominican Republic. The stated reason for denial was: "Your son, who is petitioning for you, is not legitimate."

Both sides have moved for summary judgment, and there appears to be only one disputed fact issue—in 1946 when Martin formally acknowledged Luis as his son, was Luis in Martin's custody? In view of the disposition below, however, an answer to this dispute is immaterial, so that summary judgment is appropriate here.

Luis was born in the Dominican Republic on March 10, 1946. Although his mother, Ramona Torres, never married Luis' father, Martin Grullon, at the time of Luis' birth they were free to marry each other. Martin and Ramona had other children, but in 1954, Martin married Ercida Almonte.

Within two weeks of Luis' birth, Martin, by formal instrument, acknowledged Luis as his son, a procedure claimed by Luis in this action to constitute legitimation under Law 985 of the Dominican Republic. Notwithstanding that acknowledgment, defendant Vice-Consul refused Martin's visa on the ground that Luis was not the legitimate son of Martin.

The object of this action, which has been brought by Luis, the son, is to require the Vice-Consul to issue a visa to Martin, the father. Plaintiff's claims on the merits are (1) the Vice-Consul's determination that Luis was not the legitimate son of Martin was the result of an erroneous interpretation and application of the Immigration and Nationality Act and of Law 985 of the Dominican Republic, and (2) even if the Vice-Consul's determination of illegitimacy was correct, refusal of a visa on that ground is an unconstitutional sex discrimination, since the underlying statute [8 U.S.C. § 1101(b)(1)(D)] invidiously favors mothers over fathers.

In opposition, the Government contends: (1) the Court may not review the Vice-Consul's denial of the visa; (2) the determination of illegitimacy was correct; and (3) the underlying statute is constitutional.

In *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), the Supreme Court reviewed again the extent of judicial review which may be applied in the immigration area. After reviewing some of the applicable history and pointing out the peculiarly political nature of problems pertaining to the entry of aliens, the majority concluded:

"In summary, plenary congressional power to make policies and rules for exclusion of aliens has long been firmly established. In the case of an alien excludable under § 212(a)(28), Congress has

delegated conditional exercise of this power to the Executive. We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." (408 U.S. at 769–770, 92 S.Ct. at 2585).

In *Mandel*, review of the Government action had been sought directly by the visa applicant jointly with legal residents who sought Mandel's temporary presence in this country. Governmental exclusion of Mandel was challenged on the ground that it restricted the co-plaintiffs' first amendment rights to confer with Mandel.

Plaintiff here seeks to distinguish *Kleindienst v. Mandel, supra*, on the ground that he is not reviewing consular action, but seeks merely a preliminary declaration of Martin's immigrant status. Plaintiff claims that jurisdiction lies under § 279 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1329. Similar attempts to obtain judicial review of the denial of a visa under § 279 have been rejected recently in *Gomez v. Kissinger*, 534 F.2d 518 (CA 2 1976) *de Pena v. Kissinger*, 409 F.Supp. 1182 (S.D.N.Y.1976); and *Burrafato v. United States Department of State*, 523 F.2d 554 (CA 2 1975), *cert. denied*, 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976).

Leaning in the other direction is *Fiallo v. Levi*, 406 F.Supp. 162 (E.D.N.Y.1975), in which a three judge district court found jurisdiction under § 279, pointing out that the petition there had not been an application for a visa, but for a preliminary declaration of immigrant status. The Court there stated:

"We will not extend consular non-reviewability, insofar as that rule has been recognized, beyond the actual grant or denial of a visa. This is predicated upon our reluctance to insulate entirely the actions of any public official from judicial scrutiny, and thereby foreclose a group of plaintiffs from seeking relief in the courts." (406 F.Supp. at 165).

I cannot agree with plaintiff that the action here can be maintained under a theory of preliminary declaration of immigrant status. In the first place, the complaint alleges denial of the visa to Martin, and a copy of the denial was annexed to the complaint. The prayer for relief seeks a declaration that the consul's determination of legitimacy was erroneous, or that the legitimacy standard is unconstitutional. In addition, plaintiff, in effect, demands a judgment directing issuance of the visa. In short, although the action has been brought by the resident son, its purpose and intent clearly and solely is to compel issuance of a visa to the non-resident father.

Furthermore, the Court has considerable doubt as to the validity of the distinction drawn by the Court in *Fiallo*. That Court's "reluctance to insulate entirely the actions of any public official from judicial scrutiny" is shared by this Court and, indeed, by practically every court which has considered the immunity apparently granted to consular officials from review of their visa denials. Nevertheless, the status which plaintiff seeks to have declared is the key element in whether his father's visa should or should not be granted. Moreover, the visa for which plaintiff claims to seek a "preliminary" declaration of status, has already been denied on the basis of the consul's own determination of status. No independent reason for determining that status has been offered. Finally, the Second Circuit's decision in *Gomez v. Kissinger, supra*, seems dispositive here. In that case, plaintiff sought, among other things, what also appears to be a declaration of status, namely, that her marriage was valid. If so, then, she argued, the consul's denial of her husband's application for an immigrant visa on the basis of the invalidity of the marriage should be enjoined. The district court granted summary judgment for the defendants and dismissed the action, holding that the Court lacked "jurisdiction to review the acts of American consular officials abroad

in determining whether or not to issue a visa."

On appeal, the plaintiff there, as here, argued that § 279 of the Immigration and Nationality Act of 1952 conferred jurisdiction. The Court affirmed the dismissal, stating that the prior decisions in *Kleindienst v. Mandel, supra; de Pena v. Kissinger, supra;* and *Burrafato v. United States Department of State, supra,* precluded any judicial review of the consular decision not to issue the visa. The Second Circuit expressly stated: "We reject the argument that § 279 authorizes the sort of judicial interference in the visa-issuing process sought by plaintiff." Significantly, for our purposes, that decision was handed down more than four months after the three judge court's decision in *Fiallo v. Levi, supra.*

In view of the foregoing, this Court is constrained to find that it lacks jurisdiction to review the consular act described in the complaint. Accordingly, no decision can be made on the substantive issues raised; defendants' motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

SO ORDERED.